UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lisa Greene,<br><br>      Plaintiff,<br><br>    - against -<br><br>St. Barnabas Hospital and 1199 SEIU United Healthcare Workers East,<br><br>      Defendants. | 16 Civ. 533 (VSB)<br><br>Amended Complaint and Jury Demand |

Plaintiff, by her attorney, Michael G. O'Neill, states for her amended complaint against defendants as follows:

  1.  This in an action for money damages resulting from (a) the failure of the defendant St. Barnabas to abide by the terms and conditions of the collective bargaining agreement (the "CBA") applicable to plaintiff's employment, and (b) 1199 SEIU United Healthcare Workers East's ("Local 1199") arbitrary, discriminatory and irrational refusal to represent plaintiff in enforcing the provisions of the CBA.

  2.  The Court has jurisdiction over this matter by virtue of 28 U.S.C. §1331 and 29 U.S.C. §185.

  3.  Venue is proper in that defendants reside in the Southern District of New York.

  4.  Plaintiff is an individual.

  5.  Defendant St. Barnabas Hospital ("St. Barnabas") is a non-profit corporation incorporated under the laws of New York.

  6.  Defendant 1199 SEIU United Healthcare Workers East("1199") is a Labor

1

Union.

7. Plaintiff became employed by St. Barnabas in May, 1987, as a nurse.

8. During plaintiff's employment by St. Barnabas, 1199 was plaintiff's collective bargaining representative.

9. During all relevant times, plaintiff's employment with St. Barnabas was governed by the terms of the CBA.

10. Under the CBA, a covered employee may be terminated only for cause.

11. During much of plaintiff's tenure with St. Barnabas, plaintiff was a contract administrator for 1199.

12. As contract administrator, plaintiff was responsible for ensuring that St. Barnabas adhered to the terms and conditions of the CBA with respect to the nurses in her unit.

13. Plaintiff was a zealous representative of her co-workers and was active and vocal in criticizing St. Barnabas for unfair treatment of covered employees.

14. Plaintiff's zealous representation of nurses within her unit fostered the trust and loyalty of those nurses, but it was in conflict with 1199 administrators, who sought to be more deferential to the management of St. Barnabas. This led to disagreements between plaintiff and 1199 administrators, and eventually 1199 removed some of plaintiff's responsibilities as contract administrator. The nurses represented by plaintiff petitioned 1199 to keep her on as contract administrator, but 1199 refused.

15. An individual named Williamson, who had the title of "organizer," took over many of plaintiff's functions as contract administrator. Williamson was not popular with the

2

nurses that plaintiff had formerly represented. They did not trust her, and they felt that she was a "sell out" to management. The nurses routinely asked plaintiff to give her opinion about advice or instructions given to the nurses by Williamson.

16. Williamson was bitter about the fact that the nurses continued to seek advice from plaintiff over Williamson.

17. Beginning in late 2013, St. Barnabas started a campaign of harassment and contrived discipline of plaintiff.

18. Plaintiff continued to advocate for the enforcement of the CBA, both with respect to her own rights and the rights of nurses that she worked with. During this time, 1199 failed to process or respond to grievances filed by plaintiff or complaints from other nurses in plaintiff's unit. Most of these grievances dealt with the workplace environment and issues of abusive and demeaning conduct by new managers in plaintiff's department.

19. During this period of time, plaintiff was a persona non grata at both St. Barnabas and 1199. 1199 and Williamson essentially made the decision not to enforce quality of workplace issues, and plaintiff was a thorn in their side, because she would not drop the issue.

20. Upon information and belief, 1199 and Williamson came to the conclusion that the quality of workplace grievances and complaints would not go away as long as plaintiff was employed at St. Barnabas. They viewed plaintiff as "out of control" and decided that, if she could not be controlled, it would be better if she were out of the workplace.

21. Eventually, on about November 24, 2014, St. Barnabas terminated plaintiff's employment.

22. The termination of plaintiff's employment was pretextual and without cause in violation of the CBA.

23. Plaintiff immediately grieved her termination.

24. The CBA contains a grievance and arbitration procedure.

25. Under that procedure, there are three steps before arbitration. The first step is to the immediate manager, the second step is to the department head, and the third step is to upper management, typically the Director of Labor Relations or Director of Human Resources.

26. Under normal circumstances, the first two steps take no longer than a week. The third step is typically held within a month, following which the grievance goes to arbitration if not resolved. The first two steps are typically skipped in termination grievances.

27. Plaintiff's grievance was accepted by 1199, and 1199 informed plaintiff that it would be processed in due course.

28. 1199 gave Williamson the responsibility of processing plaintiff's grievance, and it was Williamson's job to schedule the third step meeting with St. Barnabas.

29. In February, 2015, Williamson purported to schedule the third step meeting regarding plaintiff's termination with St. Barnabas. Williamson sent a letter to this effect to plaintiff's mother's house, even though Williamson knew that plaintiff did not live there and had lived in New Jersey for about ten years. Williamson also had plaintiff's cell phone number, but made no effort to contact her in advance of the third step meeting.

30. When plaintiff learned about the missed third step meeting, she contacted Williamson and asked her to keep her informed by text messages instead of letters to her

4

mother's house.

31. Thereafter, plaintiff frequently contacted Williamson and asked for updates regarding her grievance. Williamson repeatedly assured that she (Williamson) was attempting to reschedule the third step meeting.

32. By late summer, plaintiff was running out of patience. Although not common, it is not unheard of for third step meetings to take several months to be scheduled.

33. In September, 2015, plaintiff caused her counsel to write to 1199 and request to be advised of the status of her grievance.

34. Although 1199 did not respond to the letter from plaintiff's counsel, plaintiff was contacted by Williamson who told plaintiff that the third step had been scheduled for a date in October. On the day before the third step meeting was purportedly scheduled, plaintiff contacted Williamson to arrange to meet before the meeting to discuss it. Williamson told plaintiff that the third step meeting had been cancelled, because of a death in somebody's family.

35. Over the next several months, Williamson failed to reschedule the third step hearing.

36. 1199 failed to reschedule the third steep meeting between February 4, 2015 (when the original third step meeting was purportedly scheduled) and January 26, 2016, when this complaint was filed.

37. The almost twelve month delay in rescheduling the third step meeting is so outside the normal course of events that it can only be considered arbitrary and capricious on the part of 1199.

5

38. Upon information and belief, 1199's failure to reschedule the third step meeting was not the result of negligence or inattention, but intentional, motivated by animus of 1199 against plaintiff, because of her incessant raising of workplace issues that 1199 did not want to deal with. 1199 did not want plaintiff to return to work, and it hoped that plaintiff would just go away. Williamson herself was driven by animosity over plaintiff's standing with the nurses in her unit as well as Williamson's desire to ingratiate herself to 1199 leadership.

39. One of the principal purposes of the grievance and arbitration procedure is to provide prompt resolution of labor disputes.

40. This is critical, because working class people typically cannot afford to be out of work for extended periods of time.

41. Plaintiff has been out of work for over a year, and she has suffered severe financial damages by 1199's refusal to process plaintiff's grievance.

42. 1199's failure to process plaintiff's grievance has made the grievance and arbitration process of the CBA a wholly ineffective remedy for plaintiff, and plaintiff is forced to turn to this Court to enforce her rights under the CBA and to recover damages from 1199 for its failure to provide fair representation to plaintiff.

## Claim One

43. Local 1199 breached its duty of fair representation to plaintiff by failing to process plaintiff's meritorious termination grievance.

44. As a result of the Local 1199's breach of its duty of fair representation of plaintiff, plaintiff has suffered damages.

## Claim Two

45. St. Barnabas breached the CBA by, among other things, terminating plaintiff without cause.

46. As a result of St. Barnabas' breach of the CBA, plaintiff has suffered damages.

WHEREFORE, plaintiff demands judgment for all relief permitted by law, including but not limited to awarding plaintiff a money judgment for her damages, awarding plaintiff punitive damages, awarding pre-verdict, post-verdict and prejudgment interest and costs, awarding to plaintiff an attorneys' fee and granting such further and additional relief as the Court deems just and appropriate under the circumstances.

Dated: New York, New York
July 14, 2016

MICHAEL G. O'NEILL
(MO3957)

_____
Attorney for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-099

## Jury Demand

Plaintiff demands trial by jury on all issues.

7

Dated: New York, New York
      July 14, 2016                              MICHAEL G. O'NEILL
                                                      (MO3957)

_____
Attorney for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-0990