USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/17/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
LISA GREENE,                                                :
                              Plaintiff,                    :
                                                            :
            -v-                                             :      16-CV-533 (VSB)
                                                            :
                                                            :      MEMORANDUM AND ORDER
ST. BARNABAS HOSPITAL, ET AL.,                              :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X

Appearances:

Michael G. O'Neill
Benjamin L. Federici
Law Office of Michael G. O'Neill
New York, New York
*Counsel for Plaintiff*

Susan J. Cameron
Ceilidh B. Gao
Dana E. Lossia
Levy Ratner, P.C.
New York, New York
*Counsel for Defendant 1199 SEIU United Healthcare Workers East*

James S. Frank
Kate B. Rhodes
Epstein Becker & Green, P.C.
New York, New York
*Counsel for Defendant St. Barnabas Hospital*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Lisa Greene brought this action against Defendant 1199 SEIU United Healthcare

Workers East for violating its duty of fair representation, and against her former employer,

Defendant St. Barnabas Hospital, for terminating her employment in violation of the terms of the

collective bargaining agreement.  Before me are Defendants' motions to dismiss the claims

1

against them.  Because Plaintiff has failed to plausibly allege a breach of the Union's duty of fair representation, and thus failed to exhaust remedies under the collective bargaining agreement, Defendants' motions to dismiss are GRANTED and Plaintiff's claims are DISMISSED.

## I.      Factual Background[1]

Plaintiff began working at St. Barnabas Hospital ("St. Barnabas") as a nurse in May 1987.  (Am. Compl. ¶ 7.)[2]  During her employment with St. Barnabas, 1199 SEIU United Healthcare Workers East ("1199" or the "Union") was Plaintiff's collective bargaining representative, (*id.* ¶ 8), and her employment with St. Barnabas was governed by the terms of a collective bargaining agreement (the "CBA"), (*id.* ¶ 9).  Pursuant to the CBA, the employment of a covered employee could only be terminated for cause.  (*Id.* ¶ 10.)

Plaintiff was a contract administrator during much of her time at St. Barnabas, and as such was responsible for ensuring that St. Barnabas adhered to the terms and conditions of the CBA with respect to the nurses in her unit.  (*Id.* ¶¶ 11-12.)  In that role, Plaintiff advocated for her co-workers, and was active and vocal in criticizing St. Barnabas for unfair treatment of nurses who were covered by the CBA.  (*Id.* ¶ 13.)  Plaintiff's zealous representation sometimes conflicted with the desires of 1199 administrators, who deferred to St. Barnabas management. (*Id.* ¶ 14.)  This led to disagreements between Union administrators and Plaintiff, and eventually resulted in the Union removing some of Plaintiff's responsibilities as a contract administrator. (*Id.* ¶ 14.)  The nurses that Plaintiff had represented petitioned the Union to keep Plaintiff on as contract administrator, but the Union refused.  (*Id.* ¶ 14.)

---

[1] Because this is a motion to dismiss, the following facts are drawn from Plaintiff's amended complaint.  I assume all the facts to be true, and draw all inference in Plaintiff's favor.  My reference to these facts should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's amended complaint.  (Doc. 36.)

Thereafter, an individual named Nadine Williamson took over many of Plaintiff's former functions as contract administrator. (*Id.* ¶ 15.) The nurses believed that Williamson catered to management, and they did not trust her. As a result, the nurses routinely asked Plaintiff for her advice and opinion about instructions or advice given to them by Williamson. (*Id.*) Williamson became "bitter about the fact that the nurses continued to seek advice from plaintiff" instead of her. (*Id.* ¶ 16.)

Starting in late 2013, St. Barnabas began "a campaign of harassment and contrived discipline" against Plaintiff. (*Id.* ¶ 17.) Plaintiff continued to advocate for enforcement of the CBA with respect to her own rights and the rights of nurses with whom she worked. (*Id.* ¶ 18.) During this period, the Union failed to process or respond to grievances filed by Plaintiff or complaints by other nurses in the unit principally regarding "workplace environment and issues of abusive and demeaning conduct by new managers." (*Id.*) Plaintiff found that she was unwelcome at St. Barnabas and 1199. (*Id.* ¶ 19.) The Union and Williamson chose not to enforce certain quality of workplace issues that Plaintiff continued to raise and refused to abandon. (*Id.*)

Plaintiff believes that 1199 and Williamson concluded that the grievances about the quality of workplace and complaints would continue to be made as long as Plaintiff was employed at St. Barnabas. (*Id.* ¶ 20.) She also believes that 1199 and Williamson viewed Plaintiff as "out of control" and decided that "it would be better if she were out of the workplace." (*Id.*) Plaintiff's employment was terminated on or about November 24, 2014. (*Id.* ¶ 21.) Plaintiff believes that the termination was without cause in violation of the CBA, and was instead pretext for her complaints about the workplace. (*Id.* ¶ 22.)

Plaintiff immediately grieved the termination of her employment. (*Id.* ¶ 23.) The CBA contains a three-step grievance and arbitration procedure. (*Id.* ¶¶ 24-25.) "The first step is to the immediate manager, the second step is to the department head, and the third step is to upper management, typically the Director of Labor Relations or Director of Human Resources." (*Id.* ¶ 25.) Typically, the first two steps "take no longer than a week," and the third step is held within a month. (*Id.* ¶ 26.) If the grievance is not resolved at that point, arbitration proceedings are held. (*Id.*) For termination grievances, the first two steps are "typically skipped." (*Id.*)

The Union accepted Plaintiff's grievance and informed her "that it would be processed in due course." (*Id.* ¶ 27.) The Union assigned Williamson the task of processing Plaintiff's grievance, and it became Williamson's responsibility to schedule the third step meeting. (*Id.* ¶ 28.) In February 2015, Williamson "purported to schedule the third step meeting" and notified Plaintiff of the meeting by sending a letter to Plaintiff's mother's house even though she knew that Plaintiff did not live with her mother and, in fact, had lived in New Jersey for about ten years. (*Id.* ¶ 29.) Despite having Plaintiff's cell phone number, Williamson made no effort to contact Plaintiff by telephone in advance of the third step meeting. (*Id.*)

When Plaintiff learned she had missed the third step meeting, she contacted Williamson and requested that in the future Williamson contact her by text message instead of letters to her mother's house. (*Id.* ¶ 30.) From that point on, Plaintiff "frequently contacted" Williamson for updates regarding her grievance. (*Id.* ¶ 31.) Williamson "repeatedly assured" Plaintiff that Williamson was attempting to reschedule the third step meeting. (*Id.*)

Plaintiff believed that, while "not common," it is "not unheard of" for a third step meeting to take several months to be scheduled. (*Id.* ¶ 32.) Therefore, she waited until September 2015 to have her counsel write to the Union to request information about the status of

her grievance. (*Id.* ¶ 33.) The Union did not respond to Plaintiff's counsel, but Williamson contacted Plaintiff and told her that the third step meeting had been scheduled for a date in October. (*Id.* ¶ 34.) The day before the third step meeting was "purportedly" scheduled, Plaintiff contacted Williamson to arrange a meeting to discuss the upcoming third step meeting. (*Id.*) Williamson told Plaintiff that the third step meeting had been cancelled due to "a death in somebody's family." (*Id.*)

Over the next several months, Williamson failed to reschedule the third step meeting. (*Id.* ¶ 35.) Plaintiff filed her complaint on January 26, 2016. (*Id.* ¶ 36.) At the time of the filing of the complaint, Plaintiff had been out of work for over a year and had "suffered severe financial damages by 1199's refusal to process [her] grievance." (*Id.* ¶ 41.)

## II.     **Procedural History**

Plaintiff commenced this case against Defendants by filing a complaint on January 26, 2016. (Doc. 1.) On April 26, 2016, both Defendants filed pre-motion letters in anticipation of filing motions to dismiss the complaint. (Docs. 13, 16.) Plaintiff filed a letter response. (Doc. 20.) I held a pre-motion conference on May 11, 2016, during which I ordered Defendants to provide Plaintiff with copies of the letters and email purportedly sent to Plaintiff regarding the scheduling of the third step in her grievance procedure, and set a briefing schedule on Defendants' motions to dismiss in the event that the limited discovery had no effect on either party's position. (Doc. 21.) Defendants filed their motions to dismiss on June 10, 2016. (Docs. 24-27, 29-31.)[3] On July 20, 2016, Plaintiff was granted leave to amend her complaint. (Doc. 35.) She subsequently filed her amended complaint on July 20, 2016 ("Amended Complaint").

---

[3] Defendant 1199's motion was styled as a hybrid motion to dismiss and motion for summary judgment, included additional factual assertions it argued were undisputed, and fourteen exhibits attached to the declaration of Susan J. Cameron. Because I am granting the motion to dismiss, I need not reach 1199's summary judgment motion.

(Doc. 36.)  By letters dated July 27, 2016, Defendants requested that I consider their previously filed papers in support of their renewed motions to dismiss the Amended Complaint, but seeking to respond to any new arguments raised by Plaintiff's opposition in their replies.  (Docs. 37, 38.)  Plaintiff filed her opposition to Defendants' motions to dismiss on August 26, 2016.  (Docs. 40-44.)  After being granted an extension, Defendants' filed their replies on September 30, 2016.  (Docs. 46-49.)

### III. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

Ordinarily, in considering a motion made pursuant to 12(b)(6), a court is limited to the facts alleged in the complaint, and required to accept those facts as true.  *Kassner v. 2nd Ave.*

*Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint is also "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), as well as any document upon which "the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).[4]

## IV. Applicable Law

"The 'duty of fair representation is implied from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a),' and 'marks the outer boundary of a union's broad discretion to represent members of a bargaining unit.'"  *Bejjani v. Manhattan Sheraton Corp.*, No. 12 Civ. 6618(JPO), 2013 WL 3237845, at *6 (S.D.N.Y. June 27, 2013), *aff'd*, 567 F. App'x 60 (2d Cir. 2014) (internal citations omitted).  "[A] union 'has a duty to represent fairly all employees subject to the collective bargaining agreement.'"  *Id*. (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).

"[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith."  *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001) (citations omitted).  To be arbitrary, the union's actions must be "so far outside a wide range of reasonableness as to be irrational;" negligence is not sufficient.  *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010).  "A union's acts are discriminatory when 'substantial evidence' indicates that it engaged

---

[4] Here, despite not attaching the CBA to her Amended Complaint, Plaintiff specifically invokes and relies upon it as the source of authority for her claims.  (*See* Am. Compl. ¶ 1 ("This is an action for money damages resulting from (a) the failure of the defendant St. Barnabas to abide by the terms and conditions of the [CBA] applicable to plaintiff's employment, and (b) 1199 SEIU United Healthcare Workers East's . . . arbitrary, discriminatory and irrational refusal to represent plaintiff in enforcing the provisions of the CBA.").  Therefore, I consider the CBA as part of the Amended Complaint.

in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Id.* (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)).  Bad faith requires allegations that the union's actions involved "fraud, dishonesty, [or] other intentionally misleading conduct" with "an improper intent, purpose or motive." *Id.* at 709-10 (internal quotation marks omitted); *see also Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999).  Review of an alleged breach of the duty of fair representation is "highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991).  Finally, to plausibly plead breach of the duty of fair representation, plaintiffs must also allege a "causal connection between the union's wrongful conduct and their injuries." *Vaughn*, 604 F.3d at 709.

Breaches of a collective bargaining agreement by an employer are violations of the Labor Management Relations Act, 29 U.S.C. § 1985 ("LMRA").  "Although formally comprised of two separate causes of action, a suit in which an employee alleges that an employer has breached a CBA and that a union has breached its duty of fair representation by failing to enforce the CBA is known as a 'hybrid § 301/fair representation claim.'" *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006).  This is because, "when a CBA contains a binding grievance and arbitration process, an employee cannot avoid the private dispute resolution mechanism simply by suing her employer in court." *Id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983)).  Since most collective bargaining agreements "accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee cannot bring a § 301 [LMRA] action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance." *Chauffeurs, Teamsters & Helpers,*

*Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990). To demonstrate this sort of "hybrid § 301/duty of fair representation claim," a plaintiff must "demonstrate both (1) that [the employer] breached its collective bargaining agreement and (2) that [the Union] breached its duty of fair representation." *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005).

V.     **Discussion**

Plaintiff asserts two claims: (1) the Union breached its duty of fair representation with respect to enforcing Plaintiff's rights under the CBA; and (2) St. Barnabas breached the CBA by terminating Plaintiff's employment without cause. (Am. Compl. ¶¶ 43-46.) In its opening brief, the Union argued that Plaintiff's claims were barred by the statute of limitations,[5] and that the complaint failed to allege a violation of the Union's duty of fair representation as a matter of law. St. Barnabas made the same arguments, together with the assertion that Plaintiff failed to state a claim against the hospital and failed to exhaust the remedies provided her in the CBA, namely the grievance procedure with the Union. Plaintiff's Amended Complaint—filed after Defendants' opening briefs—clarified that her claim is for "fail[ure] to process" her grievance, (Am. Compl. ¶ 43), and therefore that the limitations period "began to run when plaintiff knew or should have known that the Union was not going to process plaintiff's grievance." (*See* Pl.'s Br. 4-5.)[6] In light of these new representations, the Defendants' argued, among other things, in

---

[5] Defendants initially argued that Plaintiff's claims were untimely, based on the apparent claim that the Union breached its duty by failing to set up a third step meeting within five weeks of the initial grievance. The statute of limitations for a claim of a breach the duty of fair representation is six months, *see DelCostello*, 462 U.S. at 169-71, and "begins to run when the employee knew or should have known of the breach of the duty of fair representation." *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 34 (2d Cir. 2000) (quoting *White*, 128 F.3d at 114). Defendants argued that the claim accrued on or around December 29, 2014, because Plaintiff reasonably should have known about the alleged breach when the Union failed to hold the third step meeting within the "typical" period alleged in the initial complaint. To the extent Plaintiff claims that a failure to hold a third step meeting within five weeks is a breach of the Union's duty, I agree with Defendants that the claim accrued around December 29, 2014 and is therefore time barred.

[6] "Pl.'s Br." refers to Plaintiff's Memorandum of Law in Opposition to 1199's Motion to Dismiss and for Summary

9

reply that the claim is premature, as a fifteen-month delay is not a violation of the duty of fair representation, the Union remains willing to schedule the meeting, (*see* 1199 Reply 1-7),[7] and Plaintiff has not exhausted the remedies provided her in the Union's Constitution, (*see* St. Barnabas Reply 6-7).[8]

Because I find that Plaintiff failed to state a claim for violation of the duty of fair representation, I need not reach Defendants' other arguments.

### A. *Duty of Fair Representation*

Plaintiff seeks money damages for, among other things, the Union's "arbitrary, discriminatory and irrational refusal to represent plaintiff in enforcing the provisions of the CBA." (Am. Compl. ¶ 1.) Specifically, she claims that the Union breached its duty of fair representation in failing to process her "meritorious termination grievance," (*id*. ¶ 43), and that "[t]he almost twelve month delay in rescheduling the third step meeting is so outside the normal course of events that it can only be considered arbitrary and capricious on the part of 1199," (*id*. ¶ 37). As a result of these alleged breaches, Plaintiff claims she suffered continued unemployment, but does not allege that she lost her right to ultimately pursue remedies under the CBA.[9] Therefore, the alleged injury is delay in processing of her grievance; Plaintiff remains capable of pursuing her claim under the CBA.

---

Judgment. (Doc. 40.)

[7] "1199 Reply" refers to Defendant Union's Reply Brief in Support Of Its Hybrid Motion to Dismiss and Motion For Summary Judgment. (Doc. 49.)

[8] "St. Barnabas Reply" refers to St. Barnabas Hospital's Reply Memorandum of Law in Further Support of its Motion to Dismiss the Amended Complaint. (Doc. 48.)

[9] Although not alleged in the Amended Complaint it is undisputed that, after this action was filed, the Union rescheduled the third step meeting for April 4, 2016, and that Plaintiff and her counsel were notified of the meeting. (*See* Plaintiff's Counterstatement of Facts, (Doc. 43), ¶¶ 13-15; 1199 Reply 2-4.)

Mere delay in processing a request is not itself an arbitrary decision. *See Rahman v. Museum of Natural History, City-of New York*, No. 10 CV 921(RML), 2012 WL 1077679, at *5 (E.D.N.Y. Mar. 30, 2012) (holding that two year delay in making arbitration determination was not itself a violation of the duty of fair representation). "Although the Second Circuit 'has recognized that a union may breach its duty when it fails to process a meritorious grievance in a timely fashion with the consequence that arbitration on the merits is precluded, courts typically require evidence of prejudice, non-compliance with time limits set forth in a CBA, egregious departure from standard union practice, or other evidence of bad faith before basing a DFR violation on too-slow grievance of a claim." *Bejjani*, 2013 WL 3237845, at *11 (quoting *Young v. United States Postal Service,* 907 F.2d 305, 308 (2d Cir. 1990)).

Plaintiff has insufficiently alleged prejudice as a result of the delay in processing her grievance. Even assuming that Plaintiff's grievance has merit, Plaintiff does not allege that the Union missed a deadline or deadlines such that her claim cannot be brought pursuant to the CBA. *See Sahni v. Staff Attys. Assoc.*, No. 14-cv-9873 (NSR), 2016 WL 1241524, at *8 (S.D.N.Y. Mar. 23, 2016) (concluding that there was no prejudice from delayed processing because complaint "contain[ed] no allegations that the Union's delay in arbitrating Plaintiff's involuntary transfer and suspension grievances violated any of the time limits set forth in the CBA"). Although Plaintiff asserts that she suffered in the form of continued unemployment, there are no allegations that suggest that successful completion of the grievance procedure would fail to make her whole.

Nor does the Amended Complaint allege that this delay was a substantial deviation from the 1199's standard practice. To the contrary, according to Plaintiff, it is "not unheard of" for a third step meeting to take "several months" to be scheduled, and therefore, by her own

11

admission, she did not become concerned until nearly a year after her termination. (Am. Compl. ¶ 32.) In any event, a third step meeting was in fact scheduled on at least two separate occasions: first, in February 2015, which Plaintiff missed because notification of the meeting was sent to her mother's address, (Am. Compl. ¶¶ 29-30), and then in October 2015, which had to be cancelled "because of a death in somebody's family," (*id.* ¶ 34).[10]

Finally, Plaintiff has insufficiently alleged bad faith as the cause for the delay. While the Amended Complaint appears to imply that Williamson was deliberately stalling or concocting excuses for rescheduling the third step meeting, there are no facts to support such allegations.[11] The fact that Williamson allegedly sent a meeting notification to Plaintiff's mother's house despite knowing that Plaintiff no longer lived there does not rise to the level of bad faith. Nor does the fact that a meeting was rescheduled because of a death in someone's family. *See Vaughn*, 604 F.3d at 709 ("Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." (quoting *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989)). Plaintiff acknowledges that a notification attempt was made for the February 2015 meeting, and that she was actually notified of the October 2015 meeting. (Am. Compl. ¶¶ 29-30, 34.) Taken together, the facts do not support a finding of bad faith. *See Bejjani*, 2013 WL 3237845, at *11 (noting that "series of cancelled meetings and missed phone calls" do not satisfy bad faith standard); *Sahni*, 2016 WL 1241524, at *8 (alleged collusion between union and employer supported only by conclusory

---

[10] Again, although not in the Amended Complaint, another meeting was rescheduled for April 4, 2016 after the filing of this litigation. (*See* Plaintiff's Counterstatement of Facts, (Doc. 43), ¶¶ 13-15; 1199 Reply 2-4.)

[11] Plaintiff alleges that, on information and belief, "1199's failure to reschedule the third step meeting was not the result of negligence or inattention, but intentional, motivated by animus of 1199 against plaintiff, because of her incessant raising of workplace issues that 1199 did not want to deal with" and that Williamson "was driven by animosity over plaintiff's standing with the nurses in her unit as well as Williamson's desire to ingratiate herself to 1199 leadership." (Am. Compl. ¶ 38.) But there are no facts alleged that support the conclusory allegations that Williamson's actions were intentionally meant to thwart the prosecution of Plaintiff's grievance.

allegations does not rise to plausibility standard under *Twombly*; "the Complaint makes no effort to allege an explanation as to 'why [the Union and employer] would have (or how they did) act in unison to harm [Plaintiff], or how this agreement operated on the ground.'" (quoting *Bejjani*, 2013 WL 3237845, at *15)).

Moreover, Plaintiff here has an available remedy: pursuing her claim with the Union that remains ready and willing to bring her claim to arbitration. (*See* 1199 Reply at 4.) Indeed, "federal policy . . . prefers that labor disputes such as these be settled, if possible, through contractually agreed upon arbitration procedures rather than through resort to the federal judiciary." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 164 (2d Cir. 1989). Should the claim be ultimately resolved against her, Plaintiff can then seek judicial assistance. But "there can be no doubt that the employee must afford the union the opportunity to act on his behalf." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965).

### B. *Breach of the CBA*

Plaintiff's claim that St. Barnabas fired her "without cause" in violation of the terms of the CBA is a contract claim "founded directly on rights created by the CBA" and therefore preempted by Section 310 of the LMRA. *Maack v. Wyckoff Heights Med. Ctr.*, 15 Civ. 3951, 2016 WL 3509338, at *8 (S.D.N.Y. June 21, 2016); *see Vera v. Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003). Such a claim "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Vera*, 335 F.3d at 114.

Treating Plaintiff's breach of contract claim as a § 301 claim, it fails to state a claim against St. Barnabas because Plaintiff has not satisfactorily alleged a claim against the Union for a violation of its duty of fair representation, as explained above. *See Rahman*, 2012 WL 1077679, at *6 ("[A]n employee 'cannot bring a § 301 action against an employer unless he can

13

show that the union breached its duty of fair representation in its handling of his grievance.'  As plaintiff has failed to establish a prima facie case that the Union breached its duty of fair representation, she cannot establish a hybrid § 301 claim either." (quoting *Chauffeurs, Teamsters & Helpers*, 494 U.S. at 564)); *Ladson v. Ultra East Parking Corp.*, 157 F.R.D. 209, 211 (S.D.N.Y. 1994) ("Plaintiff's inability to show breach of duty by the Union precludes any action against the employer.").  Therefore, her claim against St. Barnabas must be dismissed as well.

## VI.     Conclusion

For the foregoing reasons, Defendants motions to dismiss, (Docs. 24, 29), are GRANTED and Plaintiff's claims are DISMISSED without prejudice.  The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated:     March 17, 2017
           New York, New York

*[signature]*
Vernon S. Broderick
United States District Judge